**John F. FOULKES and Joyce A. Foulkes, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 79–1945.

United States Court of Appeals, Seventh Circuit.

Heard June 2, 1980.

Decided Jan. 21, 1981.

John Foulkes, pro se.

Jay W. Miller, Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and CUDAHY, Circuit Judges.

FAIRCHILD, Chief Judge.

This tax case requires us to consider whether a deduction for a contribution to an individual retirement account (IRA) may be taken in a year in the beginning of

which taxpayer is covered by a qualified pension plan, but during which it becomes certain that taxpayer can acquire no tax benefit from such coverage.

## I.

From November 1970 to May 1975 John F. Foulkes was employed by S&C Electric Company of Chicago (S&C). S&C maintained a qualified, noncontributory pension plan and Foulkes was covered by the plan.[1] Pursuant to the terms of the plan, Foulkes forfeited his right to benefits when he terminated his employment in May 1975.[2]

After his termination from S&C Foulkes obtained employment with Balluff & Balluff, Architects and Engineers of Elmhurst, Illinois. Balluff & Balluff had no pension plan for its employees. In December of 1975 Foulkes opened an IRA with Elmhurst Federal Savings and deposited $1,500 into the account. Pursuant to 26 U.S.C. § 219(a)(1) Foulkes claimed a $1,500 deduction on his 1975 federal income tax form.[3]

The Internal Revenue Service disallowed the deduction, contending that since Foulkes had been an "active participant" in a qualified plan for the year 1975, section 219(b)(2)(A)(i) precluded him from taking the $1,500 deduction. The Tax Court held for the Commissioner and Foulkes seeks review of that determination.[4]

## II.

A fair understanding of the issue presented for review requires some discussion of the pertinent statutory provisions. Various provisions of the Internal Revenue Code give tax advantages to employees who are members of qualified pension plans.[5] Likewise, participating employers receive special tax treatment when contributing to qualified plans.[6] These provisions were enacted by Congress to encourage the growth of pension plans—in recognition of the public interest in ensuring that an employee's economic welfare was provided for at the time of retirement.

---

1. In a contributory plan both employer and employee contribute to the plan while in a noncontributory plan only the employer contributes.

2. In a "Stipulation of Facts" filed with the Tax Court, it is stated that "When petitioner John Foulkes terminated his service with S&C Electric Company his benefits were forfeited." Forfeiture occurred upon termination if the employee had not completed fifteen years of service or was not otherwise eligible for early retirement benefits.

3. Joyce A. Foulkes is a party only because she signed the 1975 joint tax return at issue.

4. This case originally was set to be argued January 29, 1980. An order of January 24, 1980 vacated this assignment and requested supplemental briefs on five questions. These questions were:
   1. Whether the sole purpose for the exception to IRA deductions provided in 26 U.S.C. § 219(b)(2)(A) is to prevent double tax benefits, see Orzechowski v. C. I. R., 592 F.2d 677, 678 (2d Cir. 1979) and the legislative history of the statute;
   2. Whether the break in service rules in 26 U.S.C. § 411(a)(4), (6) indicate that a person in Foulkes' position who is covered by the break in service rules would retain a potential for obtaining a double tax benefit for the year of termination, thus justifying application of § 219(b)(2)(A) to his case;

3. Whether the break in service rules could have applied to Foulkes if he had returned to S&C after January 1, 1976, but within four years of his May 1975 termination from S&C, see 26 U.S.C. § 411(a)(6) and 29 U.S.C. § 1061;
   4. Whether related provisions of the Code indicate a Congressional intent to avoid situations in which a taxpayer would get no tax benefit from either a pension plan or an IRA, see, e. g., 26 U.S.C. § 402(a)(5)(A)(ii) and (e)(4)(A)(iii); and H.Rep.No.94-1020, 94th Cong., 2d Sess., pp. 1-3 (1976), reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 685, 686; and
   5. Whether, if the purpose of 26 U.S.C. § 219(b)(2)(A) is to prevent a double tax benefit, the term "active participant" in the statute should be read to include one whose benefits have been irrevocably forfeited.

5. Employer contributions to a plan are not taxable to an employee in the year of contribution. I.R.C. § 402(a). Treas.Reg. § 1.402(a)-1. The employee is taxed only when the benefits of the plan are distributed. See Comment, Impact of the Daniel Litigation: Growing Interest in Pension Vesting and Investment Control, 1979 Wis. L.Rev. 1228, 1229 n. 7.

6. I.R.C. § 404 allows an employer to deduct contributions to a plan.

These provisions, however, created inequities in that employees who were not covered by qualified plans received no corresponding tax break and thus no tax incentive to save for their retirement. H.R.Rep. No.93–807, 93d Cong., 2d Sess. 2, *reprinted in* [1974] U.S.Code Cong. & Ad.News, pp. 4639, 4670. Congress, cognizant of these inequities, passed several provisions which sought to create tax incentives for the individual, not a member of a qualified plan, who wished to create his or her own retirement fund.[7] Section 219(a)(1) provided for a deduction for contributions to an IRA of 15% of compensation includible in gross income but not to exceed $1,500.[8]

In allowing this deduction under § 219(a)(1), Congress also added a limitation—that is, § 219(b)(2)(A)(i) provides that an individual who was an active participant in a qualified pension plan for any part of such year could not claim a deduction for a contribution to an IRA made in that year.[9]

Congress, by passage of this limitation, sought to preclude the potential for an individual to obtain the tax benefit provided by being a participant in a qualified pension plan as well as the tax benefit allowed to those making contributions to an IRA.

It should be emphasized that the limitation in § 219(b)(2)(A)(i) was to prevent not merely the actual double tax benefit but the *potential* for this double tax benefit. This is made clear by the fact that § 219(b)(2)(A)(i) applies even if an individual's rights under the qualified plan are subject to forfeiture.[10]

### III.

The Commissioner places reliance on several cases in his contention that Foulkes cannot avail himself of the IRA deduction. The Commissioner also argues that the clear wording of the statute as well as the regulations promulgated thereunder[11] also

---

7. I.R.C. § 408(d) allows deferring of tax on IRA payments until the year of distribution. I.R.C. § 408(e)(1) exempts all IRA's from taxation.

8. Section 219(a)(1) provides:
    (a) *Deduction Allowed.*—In the case of an individual, there is allowed as a deduction amounts paid in cash during the taxable year by or on behalf of such individual for his benefit—
    (1) to an individual retirement account described in section 408(a).

9. Section 219(b)(2)(A)(i) provides:
    (b) *Limitations and Restrictions.*—
    (2) *Covered by certain other plans.*—No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year—
    (A) he was an active participant in—
    (i) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a).

10. An example may highlight the potential for a double tax benefit: an employee begins the year not covered by a qualified plan and makes a contribution to an IRA. In July of that year the employee obtains new employment and is covered by a qualified plan. If the employee could deduct the initial contribution to the IRA, he could receive two tax benefits. First, he receives the benefit of the deduction allowed under § 219; and second, he could receive the tax advantages attendant to being a participant in a qualified plan when the funds are distributed.

Of course, the deferral of tax on contributions to a plan by an employer may well be viewed as an immediate tax benefit, rather than the potential for a future benefit. This argument ignores that the rights may never vest, and more importantly for this case, that if a participant forfeits all rights to a plan no tax is deferred because nothing is received by the taxpayer.

11. Proposed Treasury Regulation, § 1.219–1(c)(1)(ii)(A), 40 Fed.Reg. 7662 (1975) provides:
    (ii)(A) For purposes of this section, the term "active participant" means, . . . an individual who is a participant in a . . . [qualified plan] and for whom, at any time during the taxable year,
    (1) Benefits are accrued under the plan on his behalf,
    (2) The employer is obligated to contribute to or under the plan on his behalf, or
    (3) The employer would have been obligated to contribute to or under the plan on his behalf if any contributions were made to or under the plan.
    For purposes of the preceding sentence, a participant includes an individual regardless of whether or not his benefits under the plan are nonforfeitable (within the meaning of section 411). . . . However, for any taxable year of an individual in which there have been no contributions and there has been a complete discontinuance of contributions under a plan under which such individual is covered, such individual shall not be considered an active participant.

mandate affirmance of the Tax Court. We proceed to discuss these contentions.

The Commissioner places primary reliance on *Cooper v. Commissioner,* 38 T.C.M. 1023 (1979). In *Cooper* the employee began the year as a member of a qualified plan. In September of that year the plan terminated as to him. In the same tax year the taxpayer opened an IRA account and claimed a $1,500 deduction. The Tax Court held that the deduction be disallowed, reasoning that although the plan terminated in September of 1975, the taxpayer had been an active participant in the plan for part of the year—and thus covered by the limitation of § 219(b)(2)(A)(i).

The Tax Court in this case utilized reasoning identical to *Cooper* and disallowed the deduction. The Commissioner urges us to follow *Cooper* and hold that Foulkes was an "active participant" for the year 1975.

We observe that the facts of *Cooper* are indistinguishable from the present case. However, we decline to adopt its reasoning [12] and instead look to our decision in *Johnson v. C. I. R.,* 620 F.2d 153 (7th Cir.

1980) for guidance.[13] In *Johnson* we had an opportunity to discuss section 219 and the congressional purpose behind the provision. The taxpayer in *Johnson* worked for three separate employers in the tax year. Only the last employer had a qualified pension plan. Earlier in the year Johnson had made a contribution to an IRA. The Tax Court disallowed the deduction and we affirmed. We relied upon the language of the statute and the legislative history. In discussing the legislative history we observed:

> Further buttressing the Commissioner's reading of § 219(b)(2) is the purpose behind the statute. Congress enacted § 219(b)(2) to prevent situations in which taxpayers would obtain double tax benefits by setting aside in an IRA the maximum portion of their income allowed and deferring tax on that income, while for the same year deferring tax on employer contributions to a qualified pension plan. *See* H.Rep.No.93–807, *supra,* [1974] U.S. Code Cong. & Admin.News at 4793–94; *Orzechowski v. C. I. R.,* 592 F.2d 677, 678 (2d Cir. 1979). That is precisely the situa-

---

**12.** The taxpayer in *Cooper* argued that he was not an active participant in the plan because his interests were not vested. The argument pressed by Foulkes is different—that he was not an active participant in the plan because he had no potential for a tax benefit from the plan and thus no potential for a double tax benefit. We believe these contentions are quite different. The argument in *Cooper* would fail in light of our present decision—even if a participant's rights have not vested he still might retain the potential for a tax benefit under the plan. Because *Cooper* discussed the problem in terms of vesting, which is not at issue in the present case, we do not find *Cooper* persuasive. Cf. Frankfurter, *Mr. Justice Roberts,* 104 U.Pa. L.Rev. 311 (1955) (explaining Justice Roberts' change in vote in the minimum wage cases on the basis that different arguments were made in the later case).

**13.** Other cases cited by the IRS involve factual situations where the taxpayer retained the potential for a double tax benefit. In *Pervier v. Commissioner,* 37 T.C.M. 1706 (1978) the employee opened an IRA in June of 1975 and in December of 1975 qualified for his employer's plan. Thus, the taxpayer in *Pervier* by being covered by a qualified plan would have had the potential for a double tax benefit if a deduction for the IRA contribution were allowed.

*Orzechowski v. Commissioner,* 592 F.2d 677 (2d Cir. 1979) involved a similar situation. In

*Orzechowski* the employee was covered by a qualified pension plan. Rights under the plan did not vest until ten years of employment. In 1975 Orzechowski had been employed for six years and was informed that he was to be discharged. Orzechowski promptly opened an IRA in 1975 and claimed the $1,500 deduction. In early 1976 Orzechowski was discharged from his employment. The Tax Court disallowed the deduction and the Second Circuit affirmed. The court reasoned that Congress' objective in passing § 219(b)(2)(A)(i) was to prevent non-vested plan participants from creating their own tax supported retirement benefits and thus securing a double tax advantage after their rights in the plan vested. *Orzechowski,* 592 F.2d at 678. At the end of the year, therefore, Orzechowski was a member of the plan and retained the potential for a double tax benefit.

Thus, *Orzechowski* and *Pervier* are distinguishable. Neither case presented the issue of whether the phrase "active participant" should be interpreted to include an individual who has absolutely no potential to secure a double tax benefit in a particular tax year.

Our decision in *Johnson v. C. I. R.,* 620 F.2d 153 (7th Cir. 1980) like *Orzechowski* and *Pervier* concerned a taxpayer who retained the potential for a double tax benefit.

tion in which Johnson found himself. Thus the Tax Court was correct in holding that Johnson was not entitled to the claimed deduction and that the contribution to the IRA was an excess contribution subject to the ·6% excise tax under I.R.C. § 4973.

620 F.2d at 155.[14] Thus, in *Johnson* we acknowledged the significance of the congressional purpose in defining the phrase "active participant."

■ The Commissioner urges us to follow the "clear and unambiguous" language of § 219(b)(2)(A)(i). As a corollary to this argument, the Commissioner states that where the language of a statute is precise, reliance on legislative materials is inappropriate.[15] Appellee's Brief at 8 n. 7. We reject these contentions for the reasons stated below.

■ First, the phrase "active participant" is anything but self-defining or clear

and precise. Second, the rule that extrinsic aids are unnecessary when statutory language is plain is not an absolute rule.

It is said that when the meaning of language is plain we are not to resort to evidence in order to raise doubts. That is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists. *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 53, 73 L.Ed. 170 (1928) (Holmes, J.).

In the present case the various legislative reports indicate that the congressional purpose in enacting the limitation in § 219(b)(2)(A)(i) was to avoid a potential double tax benefit. Foulkes, in making his contribution to an IRA and taking the corresponding deduction never had the potential for a double tax benefit in the year 1975.[16]

It may be contended that as a member of the plan from January 1975 to May 1975

---

**14.** This language in *Johnson* may indicate that Congress' intent in passing § 219(b)(2) was to prevent a double tax benefit rather than the mere potential for a double tax benefit. The sweep of § 219(b)(2), however, indicates that Congress sought to eliminate the potential for a double tax benefit. This is made clear in the House Report which states that an individual was to be considered an active participant even if he only has forfeitable rights to those benefits. H.R.Rep.No.93–807, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News at 4670, 4794. If Congress had sought to prevent only an actual double tax benefit it would have restructured the statutory scheme. For instance, if an individual were an active participant in a plan Congress could have allowed a deduction for IRA contributions made simultaneously. Then if the individual never became vested of his pension benefits he would have received a tax benefit for these years. And if the benefits did become vested, an amended return or different tax treatment of these pension benefits could have been provided. Such a system would cause serious administrative problems.

Also, it is clear that the scheme Congress selected accepted the possibility that some individuals would never receive the tax benefit of either being covered by a qualified plan or the deduction under § 219. This would occur if an individual were covered by a qualified plan but later forfeited those benefits.

**15.** "Where the meaning of legislation is doubtful or obscure, resort may be had in its interpretation to reports of Congressional commit-

tees which have considered the measure." *Wright v. Vinton Branch Mountain Trust Bank,* 300 U.S. 440, 463 n. 8, 57 S.Ct. 556, 562 n. 8, 81 L.Ed. 736 (1937) (Brandeis, J.). For an excellent collection of the cases discussing the use of extrinsic aids in statutory interpretation, see W. Hurst, Statutes in Court 143-50, 158–60 (1970).

We also note that interpretation of statutory language requires consideration of the statute's purpose. *United States v. American Trucking Ass'n,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

**16.** The Commissioner concedes that the break in service rules of 26 U.S.C. § 411(a)(6) could not have applied to Foulkes. Supp. Brief for the Appellee at 10–11. These rules generally provide that if an employee who terminates his employment and is covered by a qualified plan returns to that employer he will not be a new employee under the plan. Rather, if certain time requirements are fulfilled, the employee will receive credit for time employed before termination. Thus, there remains a possibility for a double tax benefit even after apparent forfeiture. Since Foulkes' plan was in effect on January 1, 1974 and the plan administrator apparently did not elect for the break in service rules to apply, 29 U.S.C. §§ 1017(b), (d), 1061(d), he was not able to receive credit for past time if he returned to work at S&C and thus had no potential for a double tax benefit.

Foulkes was reaping the tax benefits of being a plan participant. However, this argument ignores that Foulkes paid his income tax on a calendar year basis and that the potential for a double tax benefit must be assessed as of the close of the tax year— that is, December 31, 1975. On December 31, 1975 Foulkes' tax benefit as a member of a qualified plan would have been the right to defer income (and the tax thereon) from the plan. His forfeiture of the rights under the plan in that year meant that by December 31, 1975 it had been determined that he received no tax benefit as a member of the plan and that he retained no potential for such a benefit.

■ Thus, inclusion of Foulkes within the limitation of § 219(b)(2)(A)(i) would not further the congressional purpose behind that provision. In fact, the IRS concedes that there is an "absence of any potential for a double tax benefit in the instant case...." Supp. Brief for the Appellee at 17. We concede that the language of the statute arguably does include Foulkes. Yet this does not end the statutory analysis. Instead, the particular case must be viewed in light of the congressional purpose sought to be achieved.

It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.... This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act. *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). *See also United States v. American Trucking Association, Inc.*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (if following plain meaning of language of statute produces unreasonable result Court will follow purpose of act rather than literal words); *Heydon's Case*, 30 Co. 7a, 76 Eng. Rep. 637 (Exchequer 1584) (statute's purpose is guide to interpretation).[17]

To include Foulkes within the scope of the phrase "active participant" does nothing to further the congressional purpose behind § 219(b)(2)(A)(i), and likewise contravenes the congressional purpose in creating the deduction for IRA's.[18] In allowing this de-

---

**17.** The Commissioner urges that we give deference to the proposed regulations promulgated under § 219. *See* note 11 *supra*. Of course, it is axiomatic that deference be accorded to an administrative interpretation. *Indiana Welfare Rights Organization, Inc. v. Bergland*, 598 F.2d 1055 (7th Cir. 1979). Yet the interpretation need not be followed when "there are compelling indications that it is wrong...." *McElrath v. Califano*, 615 F.2d 434, 439 (7th Cir. 1980) (*quoting Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969)). We note that if the agency's interpretation were adopted, it would not further the congressional objective behind section 219. In such a situation, we believe that the interpretation is not dispositive.

**18.** In our order issued January 24, 1980 we asked the parties to consider the significance of the rollover provisions contained in 26 U.S.C. § 402(a)(5)(A)(ii), (e)(4)(A)(iii). These provisions provide that where the balance of an employee's benefit in a plan is distributed and then transferred to an IRA within 60 days of the distribution, the amount distributed is not

includable in gross income. These rollover provisions demonstrate that where there is no administrative inconvenience an individual should receive the tax benefit of either an IRA or a qualified plan. There are administrative problems which would be attendant to a system which ensured that all individuals received the tax advantages of either provision for every year. This would require either amended returns or different tax treatment of pension benefits when distributed. Such a plan might allow for simultaneous contributions to an IRA as well as participation in a qualified plan. *See* discussion in note 14 *supra*.

However, the rollover provisions indicate that where there is not administrative inconvenience—that is, the tax consequences are all cognizable in the same tax year—Congress intended that an individual not forfeit all of the potential tax benefits. Likewise, a person in Foulkes' position who can appreciate all of the tax consequences in a single year, should not forfeit his potential tax benefit. As with the rollover distribution administrative convenience is not a paramount consideration.

duction Congress sought to equalize the tax situation of those not covered by qualified plans and encourage retirement savings by individual employees. This is precisely what Foulkes sought to do. Disallowance of a deduction, therefore, would defeat the purpose behind the deduction in § 219(a).

The judgment of the Tax Court is RE-VERSED.

The Commissioner in his supplemental brief, relies on the defeat of a proposed amendment to ERISA which would have allowed those who are covered by a qualified plan to make deductible contributions to IRA's. *See* S.Rep.No.95–1263, 95th Cong., 2d Sess., 89–90, 1978–3 C.B. 315, 386.

This amendment attempted to remedy problems significantly different from that posed by the present case. First, it sought to allow those covered by a qualified plan which provided only minimal contributions to make contributions to an IRA in order to receive fuller coverage and tax benefits. Second, it recognized that individuals who although imperfectly covered by some type of plan, nevertheless retain some interest in a plan and thus receive some potential for a tax benefit at the end of the tax year in question. Foulkes, however, at the end of the tax year in question was not covered by a plan nor received the potential tax benefits of a plan. Also, the proposed amendment which was rejected would have imposed a great administrative burden on employers and the I.R.S. Foulkes' case, presenting a different issue, would not create such problems. Therefore, the rejected amendment is inapposite.

The discussion in *Guest v. Commissioner*, 72 T.C. 768 (1979) and the legislative reports accompanying the proposed amendment speak of how § 219 as presently structured excludes millions of individuals from receiving the tax benefits of IRA's if rights under their pension plan eventually are forfeited. We believe that the individuals considered excluded from the tax benefits of IRA's are those situated like the taxpayers in *Orzechowski, Johnson,* and *Pervier*—members of a plan whose rights in a plan are forfeitable but yet retain the potential for a double tax benefit.