MILTON J. SEDLACEK AND OLYMPIA E. SEDLACEK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sedlacek v. Commissioner
Docket No. 11310-79.
United States Tax Court
T.C. Memo 1982-318; 1982 Tax Ct. Memo LEXIS 438; 44 T.C.M. (CCH) 68; T.C.M. (RIA) 82318; June 7, 1982. Milton J. Sedlacek, pro se. Dennis Brager, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 2,870 in petitioners' income tax for 1975 and liability for an excise tax in the amount of $ 90 under section 4973 [1] for the same year. The parties have agreed on the disposition of several issues, and the only ones remaining for decision are (1) whether petitioners are entitled in 1975 to deduct $ 1,500 which was paid into an individual retirement account, and (2) whether petitioners' contribution to an individual retirement account was an excess contribution subject to the 6-percent excise tax imposed by section 4973. All the facts are stipulated. From July *441 1953 to July 31, 1975, petitioner Milton J. Sedlacek (hereinafter petitioner) was employed by Sears, Roebuck and Co. (Sears). During this period, he was covered by a profit-sharing plan which was 100-percent vested at, and for sometime prior to, the termination of his employment with Sears on July 31, 1975. As an active participant in the plan, he made mandatory contributions to it during 1975. On September 17, 1975, when he was 39 years of age, petitioner received a distribution of $ 28,571.67, which was the balance to his credit in the profit-sharing plan, on account of his separation from service. The distribution consisted of $ 8,677.11 in cash and $ 19,894.56 of Sears stock. The ordinary income portion of the distribution was $ 1,687.98 and the capital gains portion was $ 17,057.51; the balance of $ 9,826.18 was considered to have been contributed by petitioner. Although Sears policy prohibits the rehiring of executives, should he be rehired he would be given credit for the 16.930 years of service he had accumulated. On December 22, 1975, petitioner established an individual retirement account (IRA) by contributing $ 1,500 to a trust qualified pursuant to section 408(a). *442 He did not attempt to roll-over the entire amount of the lump sum distribution from the profit-sharing plan into his IRA. Sears also maintained a noncontributory pension plan for its employees, including petitioner, in 1975. As of December 31, 1974, petitioner had accrued an annual benefit of $ 2,729, which had increased to $ 2,826 as of the date of his termination of service. As of December 31, 1974, [2] he had accrued 16.348 years of continuous service credit under the plan and in 1975 by the date of his termination he accrued an additional.582 years of continuous service credit. Because petitioner ceased to be an employee prior to age 60, he was not entitled to receive any benefits or payments under the plan. During 1975, petitioner received compensation of $ 35,256. From September 1, 1975, to June 30, 1976, petitioner was employed as the managing director of the Los Angeles Home Furnishing Mart and was not an active participant *443 in any qualified retirement plan maintained by that organization. Petitioner deducted the $ 1,500 contribution to his IRA in 1975. Respondent disallowed the deduction on the ground that petitioner was an active participant in the Sears profit-sharing and pension plans during his Sears employment and imposed the 6-percent excise tax under section 4973. Section 219(a)(1) and (b)(1) [3] in the form in which it was in effect in 1975, provided a deduction for contributions to an IRA of 15 percent of compensation includable in gross income but not to exceed $ 1,500. Section 219(b)(2)(A)(i) [4] provided that an individual who was an "active participant" in a qualified pension plan for "any part of such year" could not claim a deduction for a contribution to an IRA made in that year. By passage of this limitation, Congress "sought to preclude the potential for an individual to obtain the tax benefit provided by being a participant in a qualified pension plan as well as the tax benefit allowed to those making contributions to an IRA." Foulkes v. Commissioner,638 F.2d 1105, 1107 (7th Cir. 1981), revg. a Memorandum Opinion of this Court; Johnson v. Commissioner,620 F.2d 153, 155 (7th Cir. 1980); *444 Johnson, Jr. v. Commissioner,661 F.2d 53 (5th Cir. 1981), affg. 74 T.C. 1057 (1980). The participating employee's tax benefits stem from deferral: he is not currently taxed on *445 funds contributed by his employer to a qualified plan, nor on any earnings generated by contributions. An individual making payments to an IRA also receives a deferral benefit, since earnings on the IRA are likewise not taxed currently; he also, of course, receives the tax benefit of a current deduction for at least part of his IRA contribution. The potential for a confluence of these benefits prompted Congress to deny a current deduction for contributions to an IRA by an employee actively participating in a qualifying plan. Orzechowski v. Commissioner,69 T.C. 750, 753 (1978), affd. 592 F.2d 677 (2d Cir. 1979). The first case applying these provisions was Orzechowski,supra, in which the taxpayer was a noncontributing participant in his employer's qualified pension plan in which his rights would not vest until he had 10 years of continuous service. When he was informed in 1975 that he would shortly be discharged, he promptly opened a retirement account in his own name and deposited $ 1,500 in that account. Thus, his case fell squarely within the section 219 (b)(2)(A)(i) language denying a deduction if "for any part" of the taxable year, *446 the person was an active participant in a plan. In reaching this conclusion, the Court reasoned that one of Congress' objectives was to prevent nonvested participants from creating their own tax-supported retirement program, thereby securing double benefits at a later time, after their rights in their employer's plan vested. Because of this potential for double benefits, to allow the IRA deduction would frustrate that objective. See also Johnson v. Commissioner,supra at 155. In the instant case, because petitioner was an active participant in the Sears profit-sharing and pension plans in 1975, his IRA deduction for that same year falls squarely within the language of section 219(b)(2)(A)(i). It is true that he had terminated his Sears employment when he made his IRA investment. Nonetheless, during the part of the taxable year prior to his resignation from his Sears position, he was covered by the Sears plan. We hold, therefore, that his claimed deduction must be denied. In Foulkes v. Commissioner,supra, relied upon by petitioner, Foulkes was employed by S & C Electric Company of Chicago (S & C) and covered by its noncontributory *447 pension plan. Pursuant to the plan, when Foulkes terminated his employment in May 1975, he forfeited his rights to benefits. In December 1975, Foulkes opened an IRA account, deposited $ 1,500 into the account, and deducted that amount on his 1975 return. The court of appeals, reversing this Court, noted (638 F.2d at 1107) that the objective of section 219(b)(2)(A)(i) "was to prevent not merely the actual double tax benefit but the potential for this double tax benefit"; the court concluded (at 1109) that because Foulkes forfeited his rights to benefits when he terminated his S & C employment "in making his contribution to an IRA and taking the corresponding deduction [he] never had the potential for a double tax benefit in the year 1975." The court held that his coverage in the S & C plan from January 1, 1975 to May 1975 was not a sufficient benefit because the determination of potential tax benefits must be made as of the end of the taxable year and, as of that date, his resignation from S & C employment had ended all potential for obtaining a double tax benefit. We think the Foulkes opinion is distinguishable from the instant case because, in 1975, petitioner *448 did receive substantial benefits under the Sears profit-sharing plan and, because his interests were not forfeited, would receive additional benefits should he be rehired. As a result of his separation from Sears service, he received the lump sum distribution of $ 28,571.67, the balance to his credit. See sec. 402(e)(4)(A). The contributions and accumulations prior to January 1, 1974 (amounting to $ 17,057.51) were accorded capital gain treatment, sec. 402(a)(2), and on his 1975 return petitioner treated his distribution to that extent as capital gain. The remainder, attributable to contributions and accumulations on or after January 1, 1974, was taxable as if the distribution had been averaged over 10 years and is subject to certain exemptions in the case of distributions under $ 70,000. Sec. 402(e)(1). Although petitioner did not elect this special averaging provision (as required by section 402(e)(4)(B)), this option was open to him in 1975. To allow him an IRA deduction as well as the favorable capital gain treatment and the option for 10-year averaging would sanction the reaping of actual and potential double tax benefits, a situation Congress intended to foreclose. *449 In addition, unlike the taxpayer in Foulkes who had forfeited all rights under his plan, petitioner retained other possible benefits under the Sears plans and thus became entitled to "potential" double tax benefits. Under both the Sears profit-sharing and pension plans, petitioner would receive the prior service credit if he were to rejoin the company--a total of 16.930 years under the profit-sharing and pension plans, a proportionate part of which accrued in 1975 prior to his separation from service. Although it is stipulated that Sears' policy prohibits the rehiring of executives, that policy could, of course, be changed at any time. Thus, under those plans, if he were allowed the IRA deduction, he would receive a double tax benefit in the case of his re-employment by Sears in 1975. Under the reasoning of the Foulkes opinion, these actual and "potential" benefits compel denial of the IRA deductions. Thus in Chapman v. Commissioner,77 T.C. 477 (1981), an employee was covered by a qualified pension plan in which benefits were keyed to "years of credited service." The employee's services were terminated by his employer on August 31, 1976, after he had *450 completed, 1,301 hours of service in 1976, sufficient to qualify his 1976 employment as a "year of service." Under the plan he was entitled to previously accrued benefits if re-employed. In denying a claimed deduction for an IRA contribution in 1976, this Court said (77 T.C. at 481): * * * the potential for a double tax benefit did in fact exist as of the end of 1976 and, consequently, the rationale adopted by the Court of Appeals in the Foulkes case is not applicable. To the same effect, see Horvath v. Commissioner,78 T.C. 86, 90-91 (1982). Section 4973(a) [5] imposes a tax of 6 percent on excess contributions to an IRA. Under section 4973(b), an excess contribution includes any amount contributed to an IRA which exceeds the amount allowable under section 219. Since petitioner was an active participant in the qualified Sears plans for a portion of 1975, he could not make any allowable contribution under section 219 during that year. We must, therefore, sustain the imposition of the excise tax. Johnson, Jr. v. Commissioner,supra;Orzechowski v. Commissioner, 592 F.2d at 679; Johnson v. Commissioner,620 F.2d at 155. *451 [6]
*452 To reflect concessions on other issues, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The stipulation gives this date as Dec. 31, 1975. Since the stipulations also refer to the accrued annual benefit as of Dec. 31, 1974, and the "additional" accrual of service credit in 1975, we infer that this date should be Dec. 31, 1974.↩
3. SEC. 219. RETIREMENT SAVINGS. (a) Deduction Allowed.--In the case of an individual, there is allowed as a deduction amounts paid in cash during the taxable year by or on behalf of such individual for his benefit-- (1) to an individual retirement account described in section 408(a). (b) Limitations and Restrictions.-- (1) Maximum Deduction.--The amount allowable as a deduction under subsection (a) to an individual for any taxable year may not exceed an amount equal to 15 percent of the compensation includible in his gross income from such taxable year, or $ 1,500, whichever is less. ↩
4. Sec. 219(b)(2)(A)(i) provides as follows: (b) Limitations and Restrictions.-- (2) Covered by Certain Other Plans.--No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year-- (A) he was an active participant in-- (i) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a),↩
5. SEC. 4973. TAX ON EXCESS CONTRIBUTIONS TO INDIVIDUAL RETIREMENT ACCOUNTS, CERTAIN SECTION 403(b) CONTRACTS, CERTAIN INDIVIDUAL RETIREMENT ANNUITIES, AND CERTAIN RETIREMENT BONDS. (a) Tax Imposed.--In the case of-- (1) an individual retirement account (within the meaning of section 408(a)), there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the excess contributions to such individual's accounts * * * (determined as of the close of the taxable year). The amount of such tax for any taxable year shall not exceed 6 percent of the value of the account * * * (determined as of the close of the taxable year). * * * The tax imposed by this subsection shall be paid by such individual. ↩
6. To support his position, petitioner cites Department of Treasury Publication 590, Apr. 1975, which states that: "If you are separated from your employer's service, you will not be considered an active participant in the plan merely because you have a vested interest in that year." In Johnson v. Commissioner,620 F.2d 153, 154-155 (7th Cir. 1980), affg. a Memorandum Opinion of this Court, the Court said: * * * Johnson argues he is entitled to the claimed deduction, relying on his interpretation of an informal I.R.S. publication and his claim that Congress intended to allow him the deduction. As the Tax Court's opinion shows, Johnson may not rely on an informal I.R.S. publication, if the tax statute denies the deduction. And the clear language of the statute denies the deduction.↩