EDWARD J. HAUSER AND EDITH HAUSER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16003–79.     Filed June 9, 1982.

Edward J. Hauser, pro se.
*Geraldine R. Eure*, for the respondent.

NIMS, *Judge*: Respondent determined a deficiency in petitioners' 1976 Federal taxes in the amount of $570. The issues for our decision are (1) whether petitioners are entitled to a section 219[1] deduction for amounts contributed during 1976 to an individual retirement account (IRA); and (2) whether petitioners are liable for a section 4973(a) excise tax for excess IRA contributions.

### FINDINGS OF FACT

Some of the facts are stipulated. The stipulation and its attached exhibits are incorporated herein by reference.

Petitioners resided in Pelham, N.Y., when they filed the petition in this case. Petitioners computed their 1976 taxable income using the cash basis method of accounting and the calendar year. Petitioner Edward J. Hauser will be referred to as petitioner in this opinion.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner was employed as a sales manager by Bethlehem Fabricators, Inc. (hereinafter the company), from January 1, 1975, to December 27, 1976. Petitioner was a regular, full-time, salaried employee during his employment with the company. Petitioner was not a member of a collective bargaining unit during this time.

The company maintained a pension plan (hereinafter the plan) for its salaried, nonunion employees at all relevant times. When petitioner was hired by the company, plan benefits did not vest until an employee accumulated 15 years of service. Also, employees had to retire in the year in which they attained age 65. The company told petitioner during his employment negotiations that he would not be covered by the plan because he was age 56-plus when hired and thus had no opportunity to attain vested benefits before mandatory retirement at age 65.

The plan was amended, effective December 15, 1975. The plan as amended (the 1975 rules) required 10 years of service prior to vesting of benefits. The 1975 rules stated that "normal retirement" occurred at age 65. The 1975 rules provided, however, that "an employee may, with the consent of the Company, remain in the service of the Company after attaining such [normal retirement] age." Section 2.025 of the 1975 rules also incorporated a 1968 policy adopted by the company's board of directors that every employee would be retired by December 31 of the year in which he reached age 65. As a result of the interplay of these two retirement provisions, an employee, with the company's consent, could work from his 65th birthday until December 31 of that year. But no employee could work beyond December 31 of the year in which he reached age 65. Two employees in fact worked beyond age 65. They retired on December 31 of the year in which they turned 65.

On May 27, 1976, the company mailed a letter to each active and retired salaried employee of the company. The letter notified the employees that the plan was going to be amended to satisfy the requirements of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93–406, 88 Stat. 829. The letter stated, inter alia:

ERISA also requires the Bethlehem Fabricators, Inc., Employees' Pension Plan to meet certain new standards for pension plans. These minimum

standards determine when an employee must become eligible to participate in a plan, when he or she has a vested right (one which cannot be taken away, except in limited circumstances) to certain benefits, and the rate at which Benefits must accrue in the participant's behalf.

The Bethlehem Fabricators, Inc., Employees' Pension Plan has NOT been amended to meet these standards yet. ERISA requires that Bethlehem Fabricators, Inc., Employees' Pension Plan apply the new standards to the plan year starting on October 1, 1976. But ERISA does not require the plan to make amendments by October 1, 1976. The amendments may come later. When they are made, they must be applied back to October 1, 1976. For example, if you were not eligible to join the plan under the rule in force October 1, 1976, but the amendment would make you eligible, the plan must count you as a member starting with October 1, 1976.

*As a result of the modification which will be made, your right to a pension and the form and amount of your pension may be affected. Regardless of your age, if you are thinking about changing jobs or retiring you should contact the General Pension Board (A. J. Kleppinger, Secretary) about your pension situation before making any decisions.* [Emphasis in original.]

Petitioner did not contact the company to determine whether the contemplated amendments would make him an active participant in the plan.

On July 17, 1976, petitioners contributed $1,500 into an IRA with the Seamen's Bank for Savings. The parties concede that the IRA satisfied the requirements of section 408(a).

Petitioner left the company's employment on December 27, 1976. Petitioner was not employed for the remainder of 1976. Petitioner's Wage and Tax Statement for 1976 (Form W–2) from the company contained the word "yes" in answer to the question in block 5 thereof: "was employee covered by a qualified pension plan, etc.?"

On May 24, 1978, the company adopted amendments to the plan (the 1978 rules) which brought it into conformity with ERISA. The amendments were effective retroactive for the plan year beginning October 1, 1976. On August 30, 1978, the Internal Revenue Service issued a determination letter which indicated that the plan as of October 1, 1976, was a qualified plan within the meaning of section 401(a).

The 1978 rules defined the term participant to mean:

any eligible employee who (i) shall have completed at least one year of continuous service, (ii) shall have attained the age of 25, and (iii) from time to time during which this plan is effective, is accruing continuous service. * * * In no event will an employee who is first hired by the Corporation on a date that is subsequent to his 60th birthday become a participant.

Also, the 1978 rules eliminated the mandatory retirement policy and the 10-year service requirement prior to the vesting of benefits. The 1978 rules provided:

*Normal Pension.* A participant who retires on or after his normal retirement date shall receive a monthly life pension determined pursuant to either the Percentage Formula or the Minimum Formula, whichever is greater, as follows: [Benefit schedule omitted.]

The 1978 rules defined the term normal retirement date to mean "the first day of the month following or coincident with the participant's 65th birthday."

The 1978 rules also included the following break in service provision:

An employee who incurs a break in continuous service prior to becoming eligible for a Deferred Vested Pension and who is rehired by the Corporation shall upon the completion of one year of continuous service following such reemployment have his previous period of continuous service aggregated with his new period of continuous service if the period of continuous service accrued prior to the break in service is in excess of the period between the break and the date of reemployment.

Petitioners deducted $1,500 on their 1976 income tax return for the July 17, 1976, contribution to the IRA account. Respondent disallowed this deduction and asserted a $90 excise tax for excess contributions to an IRA under section 4973(a).

The petitioners concede that if the Court decides that petitioner was an active participant in 1976 in a qualified plan, then petitioners are not entitled to the section 219 deduction and they are liable for the section 4973(a) excise tax.

### OPINION

The question presented in this case is whether petitioners are entitled to a section 219[2] deduction for amounts contrib-

---

[2]Prior to its amendment by sec. 311(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 274, 283, applicable generally to years beginning after Dec. 31, 1981, sec. 219(a) read as follows:

SEC. 219. RETIREMENT SAVINGS.

(a) DEDUCTION ALLOWED.—In the case of an individual, there is allowed as a deduction amounts paid in cash for the taxable year by or on behalf of such individual for his benefit—

(1) to an individual retirement account described in section 408(a),

(2) for an individual retirement annuity described in section 408(b), or

(3) for a retirement bond described in section 409 (but only if the bond is not redeemed within 12 months of the date of its issuance).

uted to an IRA during 1976. Section 219(a), as it read in 1976, allowed a deduction for "amounts paid in cash for the taxable year by or on behalf of such individual for his benefit to an individual retirement account described in section 408(a)." Section 219(b), however, prior to amendment by section 311(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 274, 283 (applicable generally to post–1981 years), provided that "No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year he was an active participant in a plan described in section 401(a) which includes a trust exempt from tax under section 501(a)." The parties concede that the only issue for our determination is whether petitioner was an active participant in a section 401(a) qualified plan for any part of 1976.

Respondent asserts that petitioner was an active participant in the plan from January 1, 1976, to September 30, 1976, under the 1975 rules. Alternatively, respondent argues that petitioner was an active participant in the plan from October 1, 1976, through the end of 1976 under a retroactive application of the 1978 rules.

Petitioner maintains that he was not an active participant in the plan under the 1975 rules. Petitioner also argues that the 1978 rules should not be applied retroactive to October 1, 1976, to deny him a section 219 deduction.

We examine petitioner's status under the 1975 rules before we analyze the retroactivity problem.

## The 1975 Rules

Respondent determined in the deficiency notice that the 1975 rules constituted a section 401(a) qualified plan for the final plan year before the ERISA requirements became effective.[3] Although petitioner questioned in his brief whether

---

For purposes of this title, any amount paid by an employer to such a retirement account or for such a retirement annuity or retirement bond constitutes payment of compensation to the employee (other than a self-employed individual who is an employee within the meaning of section 401(c)(1)) includible in his gross income, whether or not a deduction for such payment is allowable under this section to the employee after the application of subsection (b).

[3]Generally, the ERISA requirements for qualification became effective for existing plans for plan years beginning after Dec. 31, 1975. ERISA sec. 1017, Pub. L. 93–406, 88 Stat. 829,

the plan was qualified under the 1975 rules, he introduced no evidence to challenge respondent's determination. Therefore, we find that the 1975 rules established a section 401(a) qualified plan. Rule 142(a).

Petitioner argues that he was not an active participant in the plan under the 1975 rules. The Code does not define the term "active participant." In prior cases we held that an individual is an active participant in a plan if he is accruing benefits under the plan, even if he has only forfeitable rights to those benefits. *Horvath v. Commissioner*, 78 T.C. 86 (1982); *Orzechowski v. Commissioner*, 69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979). The regulations provide generally that "an individual is an active participant in a defined benefit plan if for any portion of the plan year ending with or within such individual's taxable year he is not excluded under the eligibility provisions of the plan." Sec. 1.219–2(b)(1), Income Tax Regs. These regulations, however, are effective only for taxable years beginning after December 31, 1978. Sec. 1.219–2(i), Income Tax Regs. Thus, they are not binding in this case which concerns 1976. Proposed regulations in 1975 provided generally that the term active participant means "an individual who is a participant in a plan * * * and for whom, at anytime during the taxable year, benefits are accrued under the plan on his behalf * * * regardless of whether or not his benefits under the plan are nonforfeitable." Sec. 1.219–1(c)(1)(ii)(A), Proposed Income Tax Regs., 40 Fed. Reg. 7661 (Feb. 21, 1975).

Petitioner satisfies none of these definitions because he was ineligible to receive *any* benefits under the 1975 rules. To get a benefit under the 1975 rules, an employee had to work for the company for at least 10 years. "Normal retirement" under the 1975 rules occurred on the employee's 65th birthday. Although the 1975 rules provided that an employee with the company's consent could remain employed after attaining that age, this grace provision did not help petitioner because the company's retirement policy, incorporated in section 2.025 of the 1975 rules, required all employees to retire on or before December

932. Thus, the ERISA provisions concerning participation, vesting, funding, etc., applied to the company's plan for the plan year starting Oct. 1, 1976.

31 of the year in which they turned 65. The only employees of the company who worked beyond their 65th birthday retired on December 31 of the same year. Petitioner was age 56-plus when he first was employed by the company. There was no possibility for him to collect benefits under the 1975 rules because he would have had to retire before accumulating the necessary 10 years of service. Therefore, petitioner was not an active participant in the plan under the 1975 rules because he was excluded from eligibility and thus he could accrue no benefits under the plan.

The facts in this case are significantly different from the facts in *Ellor v. Commissioner*, T.C. Memo. 1981–148, a case on which respondent relies in his argument that petitioner was an active participant in the plan under the 1975 rules. In *Ellor*, the plan required employees to work at least 10 years before benefits became vested. The taxpayer was age 57 when the plan was adopted. The plan's "normal retirement date" was "the last day of the month on or after" the date the employee attained age 65 and completed 10 years of service. An employee could work beyond his normal retirement date only if the company so authorized him. Taxpayer in that case contended that he was not an active participant because plan benefits would not vest for him absent special authorization from the company. In *Ellor*, we held that such special authorization was *not* required to vest benefits because, as we found, the normal retirement date occurred only when the employee had attained age 65 *and* had completed 10 years of work for the company. Relying on *Orzechowski v. Commissioner, supra*, we held that the fact that the taxpayer's benefits were forfeitable until the normal retirement age (which could occur after the age of 65) failed to negate her active participant status.

In this case, by contrast, petitioner does not have even a forfeitable right to benefits under the 1975 rules. In this case, unlike in *Ellor*, petitioner had to retire at age 65 whether or not he had completed the 10-year period. Under the 1975 rules, petitioner had no right to benefits and, thus, could not be an active participant in the plan.

Our holding that petitioner was not an active participant is consistent with the definition of the term "participant" in title 1 of ERISA. Section 3(7) of ERISA provides:

The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit. [88 Stat. 834, 29 U.S.C. sec. 1002(7) (1976).]

Under the 1975 rules, petitioner was not in 1976 a person "who is or may become eligible to receive" a plan benefit. Therefore, petitioner was not a plan participant for purposes of title 1. Although the definitions in title 1 do not bind this determination which arises from title 2 of ERISA (ERISA sec. 3, 88 Stat. 833), we think that this definition when considered with the other authorities previously cited implies that the authors of ERISA meant "active participant" in section 219 to be interpreted in the commonsense way: individuals like petitioner who had no chance to collect plan benefits regardless of contingencies were not active participants in the plan.

## The 1978 Rules

If the company had adopted the 1978 rules on October 1, 1976, effective that day, then petitioner would have been an active participant in a section 401(a) qualified plan for part of 1976. Respondent determined that the plan as amended by the 1978 rules continued to be a qualified plan. Petitioner does not disagree. Accordingly, we find that the plan as so amended constitutes a section 401(a) qualified plan. Rule 142(a).

Under the 1978 rules, if applied in 1976, petitioner would have been a participant in the plan in 1976 because he had completed at least 1 year of continuous service prior to 1976, he had attained the age of 25, and he had first been hired before age 60. Under the 1978 rules, petitioner would have received vested benefits if he had worked to the normal retirement date. Petitioner, thus, would have been accruing forfeitable benefits under the plan while he was working for the company in 1976, if the 1978 rules applied in 1976. Thus, petitioner would have been an active participant in the plan for that year. *Orzechowski v. Commissioner*, 69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979).

The fact that petitioner left the company's employment on December 27, 1976, does not alter the conclusion that petitioner would have been an active participant in 1976 under the

1978 rules. Petitioner would have been an active participant in a qualified plan for part of 1976 (Oct. 1 to Dec. 27) and thus would fall within the literal language of the prohibition of section 219(b). *Johnson v. Commissioner*, 661 F.2d 53 (5th Cir. 1981), affg. 74 T.C. 1057 (1980). Also, the rationale adopted by the Court of Appeals for the Seventh Circuit in *Foulkes v. Commissioner*, 638 F.2d 1105 (7th Cir. 1981), revg. a Memorandum Opinion of this Court, which holds that a taxpayer is not an active participant if, at the end of the tax year, the taxpayer retains no potential for obtaining both benefits under a qualified plan and benefits under an IRA, is inapplicable on the facts of this case because the break-in-service provision of the 1978 rules would reinstate the benefits petitioner accrued while working in 1976 if he were reemployed by the company. This type of reinstatement provision provides the type of potential double tax benefit which Congress sought to prohibit by enacting the section 219(b) active participant requirement. *Horvath v. Commissioner*, 78 T.C. 86 (1982); *Chapman v. Commissioner*, 77 T.C. 477 (1981). Thus, petitioner would have been an active participant in the plan in 1976 despite the termination of his employment on December 27, 1976, if the 1978 rules had been adopted on October 1, 1976, and had been made effective that date.

In fact, the 1978 rules were adopted in 1978. They were made effective retroactive to October 1, 1976. Respondent issued a determination letter which indicated that the plan, as retroactively amended, was a section 401(a) qualified plan as of October 1, 1976. The question for our decision, therefore, is whether the retroactive amendment of the plan by the 1978 rules is effective to deny petitioner a section 219 deduction for 1976.

Respondent relies on section 401(b) which provides:

SEC. 401(b). CERTAIN RETROACTIVE CHANGES IN PLAN.—A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of subsection (a) for the period beginning with the date on which it was put into effect, or for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements, and ending with the time prescribed by law for filing the return of the employer for his taxable year in which such plan or amendment was adopted (including extensions thereof) or such later time as the Secretary may designate, if all provisions of the plan which are necessary to satisfy such requirements are

in effect by the end of such period and have been made effective for all purposes for the whole of such period.

Respondent contends that the company satisfied the section 401(b) requirements in retroactively amending its plan in 1978 effective October 1, 1976. Petitioner provided no evidence to the contrary. Accordingly, we find that the section 401(b) requirements for retroactive effect were satisfied in this case. Rule 142(a).

Respondent contends that section 401(b) requires that the section 219(b) analysis be applied as though the 1978 rules had been adopted and had taken effect on October 1, 1976. Thus, because section 401(b) states that the plan shall be considered to have been qualified under the 1978 rules from October 1, 1976, respondent argues that petitioner was an active participant in a qualified plan for a part of 1976.

Petitioner reads section 219 with a different emphasis. He apparently concedes that a plan may be *qualified* retroactively. However, he maintains that nothing in section 401(b) or elsewhere in the Code retroactively makes him an *active participant* in such a plan for any part of 1976. Petitioner contends that his status as an active participant for 1976 must be determined at the end of 1976. Thus, he considers the retroactive amendment and the section 401(b) retroactive qualification irrelevant for section 219 purposes.

We agree with petitioner. The legislative history of section 219, the prior cases considering the accrual of forfeitable benefits, and the principle of annual tax accounting indicate that the active participant determination for 1976 should be made at the end of 1976.

Congress enacted various tax incentives to encourage private pension plans to provide for employees' postretirement welfare. For example, employer contributions to a qualified plan are not taxable to the employee in the year of contribution. Sec. 402(a). Yet, the employer may deduct the amount contributed in the year of contribution. Sec. 404. Congress recognized that these provisions created inequities because employees who were not covered by qualified plans had no tax incentives to save for retirement. Congress enacted the IRA provisions, sections 219 and 408, to treat this inequity and to encourage retirement savings on a wide basis:

*General reasons for change*

While in the case of many millions of employees, provision is made for their retirement out of tax-free dollars by their participation in qualified retirement plans, many other employees do not have the opportunity to participate in qualified plans. Often, plans are not available because an employer is not willing to incur the costs of contributing to a retirement plan since, in general, the employer contributes funds which are in addition to the compensation otherwise paid his employees. Employees who are not covered under a qualified plan are disadvantaged by the fact that earnings on their retirement savings are subject to tax, and grow more slowly than the tax-sheltered earnings on contributions to a qualified plan.

Your committee's bill deals with this problem by making available a special deduction for amounts set aside for retirement by employees who are not covered under a qualified plan * * *

* * * The maximum annual deduction is to be $1,500, or 20 percent of compensation, whichever is less. Amounts allowed as a retirement savings deduction are to be deductible from gross income (instead of from adjusted gross income) so that any taxpayer, even a taxpayer who does not itemize but uses the standard deduction, is to be allowed a retirement savings deduction. In this manner, this program will be available to the widest possible group of taxpayers. Individual retirement accounts may be established by individuals, by employers for the benefit of their employees, and by labor unions for the benefit of their members. This will widen the availability of the retirement savings deduction. [ H. Rept. 93–807, at 126–127 (1974), 1974–3 C.B. (Supp.) 361–362.]

Congress enacted the section 219 active participant requirement so that the IRA provisions would narrowly deal with the perceived inequity in the prior law. Accordingly, Congress sought to limit the IRA benefits to individuals who do "not participate in any other tax-supported retirement plan." H. Rept. 93–807, *supra* at 128, 1974–3 C.B. (Supp.) at 363. As we previously found, petitioner was not a plan participant under the 1975 rules. Also, the 1978 rules were not adopted until 1978. Thus, petitioner was not a plan participant under the plan as it existed on December 31, 1976. Therefore, as of the end of 1976, petitioner was a member of the group which was the focus of congressional concern in enacting section 219. Accordingly, we think that he is entitled to the section 219 deduction for that year.

Also, the section 219 cases considering the taxpayers who accrued forfeitable qualified plan benefits during a tax year indicate that active participant status should be determined at the end of that year. A taxpayer who accrued forfeitable benefits under a qualified plan during a tax year cannot take a section 219 deduction for IRA contributions made during the

year because, as of the end of that year, he had the potential under the plan for getting plan benefits and IRA benefits in the same year. *Orzechowski v. Commissioner*, 69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979). See also *Foulkes v. Commissioner*, 638 F.2d 1105 (7th Cir. 1981), revg. a Memorandum Opinion of this Court; and H. Rept. 93–807, *supra* at 129, 1974–3 C.B. (Supp.) at 364. This treatment of the accrual of forfeitable plan benefits indicates that the active participant determination is to be made at the end of the tax year instead of waiting for subsequent events like vesting which would establish whether the taxpayer actually received the forbidden double tax benefits. Similarly, we think that subsequent events, like 1978 retroactive amendments to the plan, should not affect the 1976 active participant determination. As of December 31, 1976, petitioner had accrued no vested or forfeitable plan benefits. He was not a plan participant at that time and thus is entitled to a section 219 deduction for 1976.

Our conclusion that the 1976 active participant determination should be decided based on the facts existing on December 31, 1976, is further suported by the principle of annual tax accounting. "Each year's return should be complete in itself," sec. 1.461–1(a)(3), Income Tax Regs. The taxpayer has to know when he fills out his return whether he is entitled to a section 219 deduction so he çan decide whether to make the IRA contribution, whether to claim the deduction, and whether he is liable for the section 4973(a) excise tax. It would be unfair to deny petitioner this 1976 deduction because of events which occurred in 1978. Also, if the law denied this deduction, then taxpayers, caught in a catch–22, may not safely make the IRA contributions. This result would frustrate the congressional purpose in enacting section 219 which was to encourage people who were not covered by qualified plans to provide for their postretirement welfare. Furthermore, since, *in 1976*, even the most sophisticated tax lawyers lacked complete understanding of the labyrinthian complexities of ERISA, we are unwilling to impose a standard of omniscience on these taxpayers as of the end of their 1976 tax year. Accordingly, we hold that petitioners are entitled to the section 219 deduction for 1976 and that they are not liable for the section 4973(a) excise tax.

We are, of course, not holding that section 401(b) is ineffective. Instead, we agree with petitioner that section

219(b) has two requirements which are relevant in this case: (1) 1976 qualified plan and (2) active participation in such a plan during 1976. Section 401(b) affects the first requirement but is irrelevant in determining the second requirement.[4]

*Decision will be entered for the petitioners.*

---

[4]Respondent made no argument that petitioner's receipt of the May 27, 1976, letter should affect the result in this case. We note, without having to decide this issue, that the letter would have to be a de facto amendment to the plan to affect the outcome in this case. The letter hardly was a herald of a certain amendment. The company might well have abandoned its attempt to maintain qualified status due to the increased costs of complying with the new sec. 401(a) requirements contained in ERISA.