DAVID E. ANTHES AND CAROLYN D. ANTHES, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3756–81.    Filed July 5, 1983.

David E. Anthes, pro se.
*Anthony A. Falzone*, for the respondent.

DRENNEN, *Judge*: This case was assigned to and heard by
Special Trial Judge John J. Pajak pursuant to the provisions of

1

section 7456(c) of the Internal Revenue Code[1] and Rule 180.[2] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

PAJAK, *Special Trial Judge*: Respondent determined a deficiency in petitioners' 1978 Federal income tax in the amount of $235.47 and determined an excise tax liability under section 4973(a) of $90.[3] The issues for decision are (1) whether petitioners are entitled to a deduction in the amount of $1,500 for a contribution to an individual retirement account, and (2) whether the 6-percent excise tax under section 4973(a) on "excess contributions" should be imposed.

## FINDINGS OF FACT

Some of the facts in this case have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners, husband and wife, timely filed their joint Federal income tax return for the taxable year 1978 with the Internal Revenue Service Center at Andover, Mass. At the time the petition herein was filed, petitioners were residents of Melrose, Mass.

Petitioners initially requested that their case be conducted in accordance with the small tax case procedures set forth in section 7463 of the Code. Since one of the issues (excise tax) involves a tax imposed by subtitle D of the Internal Revenue Code of 1954, the case was not within the category of cases covered by section 7463 (basically, income, estate, and gift taxes).[4] Accordingly, the case was ordered removed from the

---

[1]All section references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue, unless otherwise indicated. All references to a Rule are to the Tax Court Rules of Practice and Procedure.

[2]Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, the post-trial procedures set forth in that Rule are not applicable in this case.

[3]*Respondent also determined that petitioners were liable for an addition to tax under sec. 6651(a) in the amount of $28.76. Respondent conceded that issue on brief.*

[4]The procedures set forth in sec. 7463 apply to cases involving taxes imposed by subtitle A and Chs. 11 and 12 of the Code, subject to monetary limits. As to petitions filed after Oct. 25, 1982, sec. 7463 has been amended to cover subtitle D, subject to a monetary limit. Pub. L. 97–362, sec. 106(a), 96 Stat. 1730.

small tax case procedures. See *Historic House Museum Corp. v. Commissioner*, 70 T.C. 12 (1978).

Petitioner Carolyn D. Anthes (petitioner) has been employed as an x-ray technologist by the Melrose-Wakefield Hospital Association (hospital) since May 1, 1972. During 1978, she worked between 30 and 40 hours per week and in excess of 1,000 total hours for the year.

On October 1, 1967, the hospital adopted the Melrose-Wakefield Hospital Retirement Plan (the plan). According to its terms, the plan was noncontributory and had a fiscal year beginning on October 1 and ending on September 30. Based on the rules of eligibility, petitioner was included as a participant beginning October 1, 1973. Effective October 1, 1975, the plan was amended. Petitioner continued to participate in the plan, as amended, and has remained a participant through the time of trial.

On July 22, 1977, the hospital filed an Application for Determination for Defined Benefit Plan with respondent. On December 13, 1977, respondent issued a determination letter which ruled that the hospital's plan satisfied the requirements of sections 401(a) and 501(a) of the Code.

Sometime prior to April 15, 1979, petitioner David E. Anthes began exploring the possibility of the withdrawal of petitioner from the plan. Mr. Anthes apparently was concerned about the eventual benefits the plan would provide his wife. Specifically, he asked the hospital to waive petitioner's participation in the plan for 1978 so that she could establish an individual retirement account (IRA). Since the plan did not permit employees to waive participation, the request was denied. Although petitioner was given permission to irrevocably withdraw from the plan in its entirety, she did not do so.

The hospital contributed $484 to the plan on petitioner's behalf for the plan year ending September 30, 1978. A contribution of $602 was made on petitioner's behalf for the plan year ending September 30, 1979.

Petitioner established an Individual Retirement Custodial Account for 1978 with the Provident Institution for Savings, Boston, Mass. by making a contribution of $1,500 on April 12, 1979. This contribution was deemed made on the last day of petitioner's preceding taxable year. Sec. 219(c)(3) (now sec. 219(f)(3)). Petitioners claimed the contribution as an adjust-

ment to income on their 1978 Federal income tax return. Respondent disallowed the claimed adjustment on the grounds that petitioner was "a member of a qualified pension plan in 1978." Respondent also imposed a 6-percent excise tax on the "excess contributions" of $1,500. Two adjustments in favor of petitioners and an automatic adjustment of the medical expense deduction were also made.

OPINION

Section 219(a), as in effect during 1978, allowed a taxpayer to deduct certain amounts contributed during the taxable year to a qualifying individual retirement account. This deduction was specifically disallowed by section 219(b)(2)(A)(i) if the taxpayer was an active participant in a qualified pension plan for any part of the taxable year.[5] This Court has repeatedly held that an active participant is one who accrues benefits under a qualified plan, even though the rights to such benefits are forfeitable. *Orzechowski v. Commissioner*, 69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979); *Guest v. Commissioner*, 72 T.C. 768 (1979); *Horvath v. Commissioner*, 78 T.C. 86 (1982). See also *Hildebrand v. Commissioner*, 683 F.2d 57 (3d Cir. 1982), affg. T.C. Memo. 1980–532; *Johnson v. Commissioner*, 661 F.2d 53 (5th Cir. 1981), affg. 74 T.C. 1057 (1980); *Johnson v. Commissioner*, 620 F.2d 153 (7th Cir. 1980), affg. T.C. Memo. 1978–426.[6]

---

[5]Sec. 219(a) and (b)(2)(A)(i) reads in pertinent part as follows:

SEC. 219. RETIREMENT SAVINGS.—

(a) DEDUCTION ALLOWED.—In the case of an individual, there is allowed as a deduction amounts paid in cash for the taxable year by or on behalf of such individual for his benefit—

(1) to an individual retirement account described in section 408(a),

\*     \*     \*     \*     \*     \*     \*

(b) LIMITATIONS AND RESTRICTIONS.—

\*     \*     \*     \*     \*     \*     \*     .

(2) COVERED BY CERTAIN OTHER PLANS.—*No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year*—

(A) he was an active participant in—

(i) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a),

[6]We note that the decision in *Foulkes v. Commissioner*, 638 F.2d 1105 (7th Cir. 1981), revg. T.C. Memo. 1978–498, is distinguishable since petitioner herein was employed by the hospital during the entire year of 1978 and accrued benefits based on her participation in the plan during that year.

Mr. Anthes claims that petitioner was not an active participant since she was unwillingly and involuntarily included in the plan during 1978. This is difficult to accept since she was offered the opportunity to terminate her participation but did not do so. We also observe that petitioner did not testify at trial. Assuming, arguendo, that petitioner was an involuntary participant, this does not mean that she was not an "active participant" within the meaning of section 219(b)(2)(A). *Orzechowski v. Commissioner, supra.* In *Orzechowski*, the taxpayer sought a waiver of participation in his employer's plan. The Court found he had not and could not waive participation under the terms of that plan. In addition, in the year there in question the taxpayer was told informally that he probably would be laid off. In fact, he was laid off early in the following year, which was prior to the time he would have become vested. The Court held that this most reluctant participant was an active participant.

There is no question that contributions were made on petitioner's behalf under the plan for both the 1977 and 1978 plan years. In addition, since petitioner was a full-time employee during 1978, she was being credited with service toward the plan's 10-year vesting requirement. It is obvious that petitioner was accruing benefits under the plan during 1978 and that she was an active participant in 1978. *Orzechowski v. Commissioner, supra; Guest v. Commissioner, supra; Horvath v. Commissioner, supra.*

Petitioners raise a novel argument with respect to which we have found no case law.[7] Despite the favorable determination letter issued by respondent, petitioners contend that the hospital plan was not "qualified" under section 401(a) because it is not based on "actuarial assumptions * * * which * * * are reasonable assumptions" as required by section 412(c)(3).[8]

---

[7] In *Feichtinger v. Commissioner*, 80 T.C. 239, 244 (1983), the taxpayer argued, inter alia, that the statute failed to require compliance with the funding requirements of sec. 412 as a prerequisite to qualification. The Court did not rule on that argument but decided the case on other grounds. That case pertained to sec. 415 which is a requirement for qualification, and it was held that sec. 1.415–5(c)(1), Income Tax Regs., precluding a plan's anticipation of cost-of-living increases and a basis for the actuarial assumptions by which a current year's contributions are determined, was a valid interpretation and was correctly applied to taxpayer's plan.

[8] Sec. 412(c)(3) reads as follows:

Petitioners claim that petitioner would have to live until the age of 105 before she would receive all of her "allocated equity" in the plan. At best, that claim appears to be that the plan is overfunded as to petitioner in 1978. We do not know why this, in and of itself, is objectionable to petitioners since the plan is a noncontributory one. Whatever the merits of petitioners' calculations, we reject, under the facts and circumstances herein, their argument that the requirements of section 412 must be satisfied in order to have a qualified plan.

Petitioners have confused the fact that Congress has provided for minimum funding standards in section 412 with the requirements for qualification under section 401(a). The qualification requirements of section 401(a) simply do not incorporate by reference, either express or implied, the minimum funding standards of section 412. In contrast, section 401(a) expressly incorporates many related sections, such as the minimum participation standards in section 410 and the minimum vesting standards in section 411. See, e.g., section 401(a)(3) and (7), respectively. Section 412(a)(1), with nonrelevant exceptions, makes section 412 applicable to plans qualified, or determined by respondent to be qualified, under section 401(a).[9] Thus, the minimum funding standards of section 412 are to be applied after a plan has been initially qualified. Conf. Rept. 93–1280 (1974), 1974–3 C.B. 415, 444.

Moreover, by its very terms, section 412(d) permits waiver of aspects of the minimum funding standard in certain cases of substantial business hardships, and section 412(e) provides for extensions of amortization periods. These provisions make it obvious that section 412 is directed to funding, not to qualification under section 401(a). Lastly, even if a plan loses its qualified status, it remains subject to the minimum funding

---

SEC. 412. MINIMUM FUNDING STANDARDS.
  (c) SPECIAL RULES.—

\*        \*        \*        \*        \*        \*        \*

  (3) ACTUARIAL ASSUMPTIONS MUST BE REASONABLE.—For purposes of this section, all costs, liabilities, rates of interest, and other factors under the plan shall be determined on the basis of actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan.

  [9]Sec. 412(a)(2) also makes the minimum funding standards of sec. 412 applicable to qualified annuity plans under sec. 403(a) and qualified bond purchase plans under sec. 405(a).

requirements. Sec. 412(a); Conf. Rept. 93–1280, *supra*, 1974–3 C.B. at 444.[10] We find that there is a clear separation of the section 412 funding requirements and the qualification requirement under section 401(a).

Our conclusion that an alleged failure to meet the minimum funding requirements of section 412 does not result in a plan's disqualification is supported by a further reading of the legislative history of section 412.[11] The congressional reports make it clear that the penalties for failure to meet the funding requirements are excise taxes to be imposed under section 4971 on the employer who is responsible for making the contributions to the plan.

Petitioners also argue that the deduction should be allowed since petitioner may be able to retroactively withdraw from the plan. Without deciding what effect such a withdrawal would have, petitioners' argument must be rejected. Petitioners totally failed to prove that retroactive withdrawal is possible. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a). We will not decide a case based on petitioners' mere conjecture.

Petitioners' basic complaint is that they could have purchased a better retirement program through an IRA than under the hospital's qualified plan. Whether or not this is true, this kind of complaint was addressed by Congress in 1981 when it substantially amended section 219 to allow persons covered by qualified plans to take deductions for contributions to IRAs in taxable years beginning after December 31, 1981.[12] Significantly, these changes were not made retroactive.

We must apply the law as in effect during the taxable year in issue. Since petitioner was an active participant in a qualified plan during that year, we must uphold respondent's determination.

---

[10]This report contains the following statement at page 444: "Under the tax provisions, once a plan or trust has been tax qualified, the minimum funding requirements will apply, and they are to continue to apply to the plan or trust, even if it later loses its qualified status."

[11]S. Rept. 93–383 (1973), 1974–3 C.B. (Supp.) 84–85, H. Rept. 93–807 (1974), 1974–3 C.B. (Supp.) 258–263. See also T.I.R. 1334, Jan. 8, 1975, Q. & A., M-5.

[12]Sec. 219, as amended by sec. 311(a), Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 172, 274.

Inasmuch as petitioner's IRA contribution was properly. disallowed, the imposition of the 6-percent excise tax under section 4973(a) must be sustained with respect to petitioner.[13] *Orzechowski v. Commissioner*, 69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979); *Guest v. Commissioner*, 72 T.C. 768 (1979); *Randall v. Commissioner*, T.C. Memo. 1980–490; *Marsh v. Commissioner*, T.C. Memo. 1980–193.

*Decision will be entered for the respondent.*

---

[13]Respondent conceded on brief that Mr. Anthes is not liable for this excise tax.

