PAUL K. VAN SANT, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Sant v. Commissioner
Docket No. 24351-82.
United States Tax Court
T.C. Memo 1984-535; 1984 Tax Ct. Memo LEXIS 136; 48 T.C.M. (CCH) 1301; T.C.M. (RIA) 84535; October 4, 1984. Paul K. Van Sant, Jr. pro se. Arlene A. Blume, for respondent. TANSILL MEMORANDUM FINDINGS OF FACT AND OPINION TANSILL, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] Respondent determined a deficiency in petitioner's Federal income tax for 1979 in the amount of $511.85, including an excise tax of $90. The *138 issues presented for determination are as follows: (1) whether a $1,500 contribution to an individual retirement account (IRA) is deductible under section 219; and (2) whether petitioner is liable for $90 of excise tax under section 4973(a) for excess contributions to an IRA. Petitioner resided in Lutherville, Maryland at the time the petition was filed in this case. Although petitioner alone signed the petition in this case, he and his wife, Melanie had timely filed a joint Federal income tax return for 1979. On line 25 of that joint return, an adjustment to income of $1,500 was reflected representing a payment made to an IRA by petitioner in 1979. Petitioner had established his IRA with Templeton World Fund on July 24, 1979. Between July 24, 1979 and December 31, 1979 he had made $1,500 in contributions to that account. Petitioner had been employed by Riker Laboratories, Inc. for 4 1/2 years prior to his resignation in April 1979. During petitioner's employment by Riker Laboratories, Inc. (Riker) he was covered by his employer's qualified profit sharing plan. The plan for Riker employees was a noncontributory, profit-sharing plan controlled by Riker's parent *139 corporation, 3-M Company, under which contributions were made by 3-M on behalf of all employees with more than 1 year of service. Either Riker or its parent corporation, 3-M, made contributions to the profit-sharing plan on petitioner's behalf based upon his service during his 4 1/2 years of employment with Riker.An employee's rights in the 3-M profit-sharing plan vested after 10 years. It is agreed by the parties that upon termination of petitioner's employment with Riker in April 1979, petitioner was not vested under the Riker plan and did not receive any distribution from that plan. Employees who terminated their employment with Riker without being vested in the plan, but who later return to employment with Riker sometimes regained rights in the plan based upon their prior employment with Riker. After leaving Riker Laboratories, petitioner went to work for Legg, Mason, Wood, Walker, Inc. where he was not eligible for coverage by that company's qualified pension plan in 1979. Although this case was originally filed as a small tax case, at the conclusion of the trial petitioner orally requested that the case be removed from the small case category, which request *140 was granted.The record here consists of a partial stipulation of facts together with exhibits plus the testimony of petitioner. Section 219(a), as in effect in 1979, generally allowed a deduction for a contribution to an IRA. Under that section, an individual may deduct from his gross income the lesser of $1,500 or 15 percent of the individual's compensation included in gross income for the taxable year. Section 219(b) is captioned "Limitations and Restrictions" and subparagraph 2 thereof deals with a situation where a taxpayer is covered by certain other plans. The precise Code language reads "No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year--(A) he was an active participant in--(i) a plan described in section 401(a) * * *" Thus, if petitioner was an active participant "for any part of such year" in a qualified plan during the first part of 1979, this would disqualify him from taking a deduction for a contribution made to an IRA duringthat year. An individual is considered to be an "active participant" if he is accruing benefits under a qualified plan even though he has only forfeitable rights to plan benefits *141 and such benefits are in fact forfeited by termination of employment before any rights become vested. Orzechowski v. Commissioner,69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979). Petitioner contends that his lack of vested rights in the 3-M plan as well as the forfeiture of rights to benefits under the plan (upon his resignation from Riker in April 1979) must be determined at the end of 1979; so determined, they effectively rendered him not an active participant in the plan for 1979. Orzechowski v. Commissioner,supra, resolves this controversy by requiring that petitioner be regarded as an "active participant." The controversy here narrows even more and focuses upon respondent's contention that if petitioner was an "active participant" in the qualified plan "for any part of the year" this requires that we sustain respondent. The facts in this case disclose that petitioner was an active participant in the 3-M profit-sharing plan from January 1, 1979 until his resignation on April 14 1979. Respondent argues that this 3 1/2 months participation under the plan is sufficient to qualify petitioner as being an "active *142 participant" for "part ofthe year 1979." We agree. This very literal reading of the statute has been approved by this Court in Kacin v. Commissioner,T.C. Memo. 1979-410. In the present case there is also the possibility that the break-in-service rule of section 411(a)(6) may have been included in the plan. While a copy of the plan or even a summary of the plan is not available in the record, the evidence indicates a probability that if petitioner should ever be re-employed by Riker, his former service would be taken into account to determine his benefits. This factor distinguishes the present case from that of Foulkes v. Commissioner,638 F.2d 1105 (7th Cir. 1981), revg. T.C. Memo. 1978-498, upon which petitioner relies and for which he argued strongly on brief. Cognizant of Congressional concern and the reasons for the somewhat harsh rule here discussed, this Court has in several recent cases recognized the potential for double tax benefit which justifies the rule. See Chapman v. Commissioner,77 T.C. 477 (1981); Horvath v. Commissioner,78 T.C. 86 (1982). It seems clear enough that *143 petitioner was in fact an active participant in a qualified plan for the first 3 1/2 months of 1979 and is, for this very fact, precluded from deducting any contributions to an IRA in 1979. Section 219(b). See also Hildebrand v. Commissioner,683 F.2d 57 (3d Cir. 1982), affg. T.C. Memo. 1980-532; Johnson v. Commissioner,661 F.2d 53 (5th Cir. 1981), affg. 74 T.C. 1057 (1980); Johnson v. Commissioner,620 F.2d 153 (7th Cir. 1980), affg. T.C. Memo. 1978-426. This result also requires that we regard petitioner's contribution to the IRA in 1979 as an "excess contribution" which is subject to the 6 percent excise tax under section 4973(a). On this second issue we also hold for respondent. Anthes v. Commissioner,81 T.C. 1, 8 (1983), affd. in an unpublished opinion     F.2d     (1st Cir. June 6, 1984). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. All rule references are to the Tax Court Rules of Practice and Procedure. The Court has concluded that the post-trial procedures of Rule 182 are not applicable in these circumstances. This conclusion is based upon the authority of the "otherwise provided" language of that rule.↩