ROBERT V. AND PAMELA H. DAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Day v. Commissioner
Docket No. 11335-79.
United States Tax Court
T.C. Memo 1985-251; 1985 Tax Ct. Memo LEXIS 380; 49 T.C.M. (CCH) 1555; T.C.M. (RIA) 85251; May 28, 1985. *380 Petitioner-husband accrued vested benefits in his employer's noncontributory tax-qualified pension plan until June 30, 1976. During 1976, he contributed $1,500 to an individual retirement account (IRA). Held: (1) Petitioner-husband was an active participant in a tax-qualified pension plan for part of 1976. Consequently, the IRA contribution is not deductible. Sec. 219(b)(2)(A)(i), I.R.C. 1954, as then in effect. (2) The 6-percent excise tax on excess contributions to an IRA under section 4973(a) applies. Robert V. Day and Pamela H. Day, pro se. Thomas C. Morrison, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax and in excise tax under section 4973(a)[1] against petitioners for 1976 in the amounts of $488 and $90, respectively. After concessions by petitioners, the issues for decision [2] are as follows: (1) Whether petitioners are entitled to deduct a $1,500 contribution petitioner-husband made to an individual retirement account (IRA) under section 219; and (2) Whether petitioners are liable for the 6-percent excise tax on excess contributions to an IRA imposed by section 4973. *381 FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Robert V. Day (hereinafter sometimes referred to as "Robert") and Pamela H. Day (hereinafter sometimes referred to as "Pamela"), husband and wife, resided in Springfield, Virginia. Robert, an engineer, began to work for Pan American World Airways, Inc. (hereinafter sometimes referred to as "Pan Am") on March 12, 1962. Robert was employed by Pan Am on a continual, full-time basis from March 12, 1962, until June 30, 1976, except for an approximately 18-month period from August 1972 to February 1974, when he was laid off. Robert ended his employment with Pan Am on June 30, 1976. During his employment tenure with Pan Am, *382 Robert was employed as an engineer in the Aerospace Services Division, Eastern Test Range. His post of duty was at Patrick Air Force Base in Florida. Robert was a salaried nonunion employee of Pan Am. During all years material to the instant case, Pan Am administered a retirement plan known as the "Pan American World Airways, Inc. Cooperative Retirement Income Plan" (hereinafter sometimes referred to as "CRIP"). Robert first became eligible to participate in CRIP on April 1, 1963. CRIP, as in effect for 1976, provides in pertinent part as follows: ARTICLE I
Definitions
* * * N. Contributory Member
A Member who is making the contributions required or permitted under Article VII, Section A, of the Plan. A Member is only a Contributory Member during a Computation Period, or percentage thereof, during which he is making contributions. * * * BB. Member
Every Covered Employee who shall be admitted to membership pursuant to Article II hereof and whose membership shall not have been terminated pursuant to such Article. * * * ARTICLE II
Membership and Service
A. Present Members
Every Covered Employee who was a Member of the Prior Plan on December 31, 1975, shall remain a Member, subject *383 to terms of this Plan. B. A Covered Employee who meets the general prerequisites for membership set forth in Section C of this Article II shall be referred to herein as an "Eligible Covered Employee". C. Other Covered Employees
Each other Covered Employee on the Effective Date and any person who thereafter becomes a Covered Employee shall be eligible for membership in the Plan on the first day of any month after which he has both: (i) completed at least one Year of Service for eligibility as defined in Section J of this Article II; (ii) has attained age 25; and (iii) has not attained the Normal Retirement Date of the Job Class in which he is then an Employee, provided that he is still a Covered Employee on such date. D. Every Eligible Covered Employee who files with the Pension Committee a written application provided by the Pension Committee to become a Contributory Member of this Plan will be admitted to membership; in the case of non-contributory membership, application shall be deemed made on the date on which an Employee becomes an Eligible Covered Employee.The application will provide for contributions by the Member, if the Member is required or permitted to make contributions, *384 and will permit the Eligible Covered Employee to authorize the Employer to deduct such contributions, if any, from his Compensation. The Eligible Covered Employee shall become a Member on the first day of the month following the month in which such application is received by the Pension Committee or his date of Eligibility whichever is later. The Pension Committee may adopt rules and regulations under which, for good cause, an application may be deemed to have been filed at a date earlier than the date of its actual filing. E. Under regulations adopted by the Pension Committee, a Member who has elected to make contributions may suspend such contributions and a Member who was [sic] not previously elected to make contributions may, if permitted to do so under the Plan, elect to make contributions. The foregoing elections shall be effective for the first pay period in the month following the date on which the election is received by the Pension Committee and on the terms and conditions provided in any applicable collective bargaining agreement. * * * G. Cessation of Participation
An Employee shall cease to be a Member when he terminates his employment with an Employer by reason of *385 retirement or otherwise or when he is no longer in a Job Class covered by this Plan. If a former Member again becomes a Covered Employee, he may resume membership in the Plan as provided in Sections C and D, provided that only years of Benefit Credit Service by a Member shall be counted for purposes of benefit accrual under this Plan. ARTICLE VIII
Vested Benefits Termination of Employment
A. Vested Benefits
A Member's right to receive his accrued Normal Retirement Benefit or his accrued Minimum Normal Retirement Benefit shall become nonforfeitable (vested) when he has completed ten (10) Years of Service for vesting as defined in Article II, or has reached the earliest date he could have designated as his Early Retirement Date. When Robert first became eligible to participate in CRIP, he expressly elected not to make any employee contributions to CRIP. Throughout Robert's employment tenure with Pan Am, Robert did not make any employee contribution to CRIP, but (except during the lay-off period) Pan Am made employer contributions to CRIP on Robert's behalf. As a result of Pan Am's employer contributions to CRIP, Robert accrued yearly pension benefits under CRIP of $5 for each month *386 of credited service, these benefits being payable at age 65 (or on a reduced basis in the case of early retirement). These benefits became vested before 1976. Robert accrued benefits on account of 11 years, 8 months of service, which included his service through June 30, 1976. As a result, Robert is entitled to receive from CRIP a yearly pension of $700 beginning at age 65, or a reduced amount beginning at an earlier age. [3]
The Internal Revenue Service (hereinafter sometimes referred to as "the IRS") has, from time to time, issued letters ruling that CRIP was a tax-qualified pension plan under section 401(a). A letter from the IRS to CRIP dated October 3, 1974, rules that CRIP is a tax-qualified pension plan under section 401(a) and states that "[t]his determination letter will not be effective for plan years beginning after December *387 31, 1975." [4] Sometime on or after April 6, 1977, CRIP applied to the IRS for a determination that it is a tax-qualified pension plan under section 401(a). This application did not involve a plan termination. By letter dated September 29, 1978, the IRS determined that CRIP was a tax-qualified pension plan under section 401(a), effective from January 1, 1976, conditioned on the adoption of certain amendments (hereinafter sometimes referred to as "the amendments") to CRIP on or before the date prescribed by the regulations under section 401(b) (within 91 days after the letter dated September 29, 1978, was issued). The amendments were effected by CRIP on an administrative basis, and incorporated into CRIP, but no formal resolution of adoption was made. On December 30, 1975, Robert established an individual retirement account (hereinafter sometimes referred to as *388 "the IRA") with the First Federal Savings and Loan Association of Osceola County, Kissimmee, Florida. The IRA is one described in section 408(a). During 1976, Robert made an aggregate contribution of $1,500 to the IRA. On their 1976 Federal income tax return, petitioners deducted the $1,500 Robert contributed to the IRA during 1976. * * * Robert accrued vested pension benefits under CRIP from January 1 through June 30, 1976. OPINION I. Income Tax
Petitioners contend that Robert was eligible to make a deductible contribution to the IRA for 1976 under section 219(a) because (1) while Robert was covered by CRIP during part of 1976, he was not an "active" participant in CRIP; and (2) CRIP was not a tax-qualified pension plan during 1976. Consequently, petitioners contend, under section 219(a) they are entitled to deduct the $1,500 Robert contributed to the IRA in 1976. Respondent contends that Robert was an active participant in CRIP in 1976 and that CRIP was a tax-qualified pension plan in 1976. Consequently, respondent contends, under section 219(b)(2)(A)(i) petitioners are not entitled to deduct the $1,500 Robert contributed to the IRA in 1976. We agree with respondent. Section 219(a) *389 [5] permits an individual to deduct (subject to dollar limitations and other restrictions none of which are in issue in the instant case) amounts paid in cash to an IRA. However, section 219(b)(2)[6] *390 disallows the deduction for a year to any individual who, for any part of that year, is an active participant in a tax-qualified pension plan under section 401(a). A. Active Participant
In Orzechowski v. Commissioner,69 T.C. 750, 753 (1978), affd. 592 F.2d 677 (CA2 1979), this Court noted that section 219 does not define the term "active participant" and so we would look to the legislative history. The report of the Committee on Ways and Means of the House of Representatives states as follows: Generally, for purposes of the retirement savings deduction, an employee is to be considered an active participant in a plan if, for the year in question, benefits are accrued under the plan on his behalf (as in a defined benefit plan) * * *. An individual is to be considered an active participant in a plan if he is accruing benefits under the plan even if he only has forfeitable rights to those benefits. Otherwise, if an individual were able to, e.g., accrue benefits under a qualified plan and also make contributions to an individual retirement account, when *391 he later becomes vested in the accrued benefits he would receive tax-supported retirement benefits for the same year both from the qualified plan and the retirement savings deduction. * * * H. Rept. 93-807 (1974), p. 128-129, 1974-3 C.B. (Supp.) 236, 363-364. Based on the foregoing and the statutory language denying a deduction for a taxpayer who is an "active participant" "for any part" of the taxable year, this Court and other courts have held that no deduction is allowable for an IRA contribution for a year for which the taxpayer has accrued any benefits or contributions under a tax-qualified plan, even if these benefits or contributions have been forfeited. Hildebrand v. Commissioner,683 F.2d 57 (CA3 1982), affg. a Memorandum Opinion of this Court [7]; Horvath v. Commissioner,78 T.C. 86 (1982); Chapman v. Commissioner,77 T.C. 477 (1981); accord, Johnson v. Commissioner,661 F.2d 53 (CA5 1981), affg. 74 T.C. 1057 (1980). In the instant case, it is clear (and we have found) that Robert accrued vested pension benefits under CRIP from January 1 through June 30 of 1976. Consequently, we conclude that he was an active participant in CRIP, within the meaning *392 of section 219(b)(2)(A)(i), during part of 1976 [8]. At trial, petitioner placed into evidence a report and testimony of a linguistic expert, Deborah F. Tannen. Her opinion is that the ordinary meaning of the term "active participant" would require that the participant do something of his own volition. At most, Tannen's opinion might warrant a conclusion that the term "active participant" in section 219 is ambiguous. However, we in effect recognized this possibility in Orzechowski, and so we looked to the legislative history of section 219 for guidance. The legislative history of section 219 is not ambiguous.Under the legislative history of section 219, it is clear that a person who accrues benefits under a tax-qualified plan is an active participant. No act of volition by that person is required. We considered an argument similar to that advanced by petitioners in Anthes v. Commissioner,81 T.C. 1 (1983), *393 affd. without pub. op. 740 F.2d 953 (CA1 1984), and concluded that an involuntary participant in a noncontributory pension plan was an active participant in that plan. We see no reason to reach a different conclusion in the instant case. Petitioners also contend that they relied on and were misled by one of respondent's informal publications as to the meaning of the term "active participant". Even if they were so misled, petitioners simply may not rely on an informal publication, if the publication conflicts with the statute. Johnson v. Commissioner,620 F.2d 153, 155 (CA7 1980), affg. a Memorandum Opinion of this Court [9]; Huntsberry v. Commissioner,83 T.C. 742, 754 (1984); Green v. Commissioner,59 T.C. 456, 458 (1972). We hold that petitioner was an active participant in CRIP for part of 1976. B. Qualified Plan
We next consider whether CRIP was a tax-qualified pension plan for 1976. Although petitioners placed into evidence voluminous documents relating to CRIP, on brief they raise only two distinct contentions as to why CRIP was not a tax-qualified pension plan under section 401(a) in 1976 [10] *394 . Petitioners contend that CRIP *395 was not a tax-qualified pension plan during 1976 (1) because CRIP failed to notify Robert of the amendments to CRIP made in 1977 as required by section 7476; and (2) because the "token" contributions made by CRIP on Robert's account did not satisfy the legislative intent of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829 (hereinafter sometimes referred to as "ERISA"). (See Anthes v. Commissioner,81 T.C. at 5-7, for a similar effort by a taxpayer to challenge the status of a plan in which she was an active participant.) Respondent determined in the notice of deficiency that Robert was an active participant in a tax-qualified pension plan under section 401(a). Petitioners have the burden of proving that CRIP was not a tax-qualified pension plan under section 401(a). Rule 142(a), Tax Court Rules of Practice and Procedure.
Section 3001(a) [11] *397 of ERISA, 88 Stat. 995, 29 U.S.C. 1201(a), provides that before issuing an advance determination of whether a pension plan meets the requirements of section 401(a), the Secretary of the Treasury is to require the applicant to notify each employee who qualifies as an interested party (within the meaning of regulations *396 prescribed under section 7476(b)(1)) of the application for a determination. Under section 1.7476-1(b) [12] *398 , Income Tax Regs., persons who are not present employees when the application is made are considered interested parties only in the case of a plan termination. [13] In the instant case, it is clear both that (1) Robert was no longer an employee of Pan Am when CRIP applied in 1977 or 1978 to the Internal Revenue Service for a determination as to its status as a tax-qualified pension plan, and (2) this application did not involve a plan termination. Consequently, under section 1.7476-1(b), Income Tax Regs., Robert was not an "interested party" with respect to CRIP's application and, therefore, was not entitled to notice under section 3001(a) of ERISA. Also, petitioners have confused the requirements for obtaining a determination letter from the Internal Revenue Service with the requirements for qualification under section 401(a). Applying for a determination letter from the Internal *399 Revenue Service is not a requirement for qualification under section 401(a). See H. Rept. 93-807 (1974) p. 105, 1974-3 C.B. (Supp.) 236, 340; S. Rept. 93-383 (1973) p. 112, 1974-3 C.B. (Supp.) 80, 191; section 1.501(a)-1(a)(2), Income Tax Regs.; Estate of Green v. Commissioner,82 T.C. 843, 846-847 (1984), on appeal (CA2 March 4, 1985). Compare sections 505(c) and 508(a). Similarly, the qualification requirements of section 401(a) do not incorporate by reference, either express or implied, the notification requirements of section 3001(a) of ERISA. As the Supreme Court has noted, ERISA is a "comprehensive and reticulated statute". Nachman Corp. v. Pension Benefit Guar. Corp.,446 U.S. 359, 361 (1980). However, petitioner has not shown us, and we have not found, any intersection of two or more of that statute's provisions that would enable petitioner to salvage his IRA deduction by tearing down the plan in which, we have held, he was an active participant. Petitioners also contend that while CRIP may satisfy the letter of the law, it fails to satisfy the intent of ERISA, in that Pan Am made only "token" contributions to CRIP on behalf of Robert. However, ERISA does not impose upon *400 employers the requirement that they provide any set minimum benefit to participants in their pension plans. [14] Petitioners also state that the "token" contributions on behalf of Robert were "a subterfuge by Pan Am to meet the percentage coverage requirements of Section 410(b)(1)(A)". Apparently, petitioners are contending that while CRIP did not discriminate as to participation, it did discriminate as to the payment of benefits. See section 401(a)(4). However, the record is devoid of any evidence that would suggest that CRIP was discriminatory in this manner. Petitioners have not established the factual predicate to their argument. Consequently, we conclude that petitioners have failed to carry their burden of proof to establish that CRIP was not a tax-qualified pension plan under section 401(a) during 1976. Petitioners' *401 basic complaint is that they could have purchased a better retirement program through an IRA than under CRIP. (This contention, and our response to it, are not affected by the factual uncertainty reflected in n. 3, supra.) However, while this is probably true, as we stated in Guest v. Commissioner,72 T.C. 768, 777 (1979): Clearly, the enactment of section 219(b)(2), excluding the [taxpayer]-employees and tens of millions of others from the benefits of the IRA program, was not an inadvertence. Nor did the fact escape the attention of the Congress that, as a result, people eligible to establish IRAs might be better off than active particiapnts in "poor plans" and active participants whose accrued benefits are likely to be forfeited. This kind of complaint was considered by Congress in the course of the legislative process that resulted in enactment of the Tax Reform Act of 1976, Pub. L. 94-455, and again during consideration of the Revenue Act of 1978, Pub. L. 95-600. See Guest v. Commissioner,72 T.C. at 773-775, for a detailed description of these considerations. In 1981, Congress finally resolved this problem when it substantially amended section 219 to allow persons covered *402 by tax-qualified plans to take deductions for contributions to IRAs, but only in taxalbe years beginning after December 31, 1981. [15]
We must apply the law as in effect for the year in issue. E.g., Anthes v. Commissioner,81 T.C. at 7. Since Robert was an active participant in CRIP, a tax-qualified pension plan, during part of 1976, we conclude that petitioners are not entitled to deduct the $1,500 Robert contributed to the IRA in 1976. We hold for respondent on this issue. II. Excise Tax
Section 4973(a)[16] *403 imposes an excise tax in an amount equal to 6-percent of excess contributions to an IRA. Section 4973(b)[17] *404 defines "excess contributions", for purposes of the instant case, as the excess of the amount contributed to the IRA for the taxable year over the amount allowable as a deduction under section 219. [18] *405 Inasmuch as we have found that Robert contributed $1,500 to the IRA in 1976, and that the IRA is described in section 408(a), and we have held that this contribution for 1976 is not allowable as a deduction under section 219, the entire $1,500 is an "excess contribution" for 1976. Consequently, the 6-percent excise tax is clearly applicable to the $1,500. The fact that Robert may have misunderstood the requirements of section 219 does not affect this result. "Willfulness is not an element in the imposition of the excise tax under section 4973." Johnson v. Commissioner,74 T.C. at 1061; see Orzechowski v. Commissioner,69 T.C. at 756-757. Both sides agree that the IRA qualified as such under section 408(a). The IRA is not invalidated by the excess contributions. The IRA continues to be exempt from taxation on its earnings. The section 4973 *406 tax is imposed to offset the benefit that would otherwise flow from exempting from current taxation the earnings on contributions that exceed the maximum permitted contributions. Benbow v. Commissioner,82 T.C. 941, 950-951 (1984), on appeal (CA6 and CA7, Nov. 26, 1984); see Boggs v. Commissioner,83 T.C. 132, 152-153 (1984), on appeal (CA4 and CA6, Jan. 10, 1985). We hold for respondent on this issue. * * * It appears that the notice of deficiency addressed to petitioners may be understood as determining joint liability for the excise tax deficiency. However, it is not clear that such liability lies against Pamela (compare the last sentence of section 4973(a), as in effect for 1976 (see n. 16, supra), with so much of section 6013(a) as precedes paragraph (1) thereof and with section 1.6017-1(b)(2), Income Tax Regs.). See Johnson v. Commissioner,74 T.C. at 1062. In order to permit the parties to resolve this matter. Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue. ↩
2. The medical expense adjustment in the notice of deficiency is derivative and depends on the settled issues and our resolution of the issues in dispute. Several other adjustments in the notice of deficiency are not disputed.↩
3. So stipulated. This is consistent with some of the exhibits, but others indicate that the accrual rate was $7.50 per year, per month of credited service, which would result in a yearly pension of $1,050 for Robert. The parties have not explained this apparent conflict in the exhibits, which may be the result of a retroactive increase in benefits.↩
4. The Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. 93-406, 88 Stat. 829, was enacted on September 2, 1974. In the case of plans in existence on January 1, 1974, many of the new qualification requirements of ERISA applied to plan years beginning after December 31, 1975. Section 1017(b) of ERISA, 88 Stat. 932.↩
5. SEC. 219. RETIREMENT SAVINGS. (a) Deduction Allowed.--In the case of an individual, there is allowed as a deduction amounts paid in cash during the taxable year by or on behalf of such individual for his benefit-- (1) to an individual retirement account described in section 408(a), * * * [The subsequent amendments of this provision (by sec. 1501(b)(4)(A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1736 and sec. 311(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 274) do not affect the instant case.] ↩
6. SEC. 219. RETIREMENT SAVINGS. (b) Limitations and Restrictions.--* * * (2) Covered by certain other plans.--No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year-- (A) he was an active participant in-- (i) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a), * * * [The subsequent amendment of this provision (by sec. 311(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 274-275) does not affect the instant case. See text accompanying n. 15, infra.↩]
7. T.C. Memo. 1980-532↩.
8. Since Robert's pension benefits were vested during 1976, he would receive an actual double tax benefit if petitioners were allowed to deduct his 1976 contribution to the IRA. Consequently the opinion in Foulkes v. Commissioner,638 F.2d 1105 (CA7 1981), revg. T.C. Memo. 1978-498↩, is clearly distinguishable.
9. T.C. Memo, 1978-426↩.
10. On answering brief, petitioners raise an additional contention relating to this issue. Petitioners contend that (1) in order to continue to be a tax-qualified pension plan after the passage of ERISA, CRIP had to be amended in various ways; (2) these amendments were not made until 1977 or later; (3) Robert had to decide by December 31, 1976, whether to contribute to an IRA in 1976; and (4) consequently, for purposes of this case, the amendments should not be given retroactive effect so as to qualify CRIP as of January 1, 1976. Petitioners did not raise this theory at or before trial or in their opening brief. We will not consider a new theory raised for the first time on answering brief. Markwardt v. Commissioner,64 T.C. 989, 997-998 (1975). Even if we were to consider this theory, section 401(b) specifically permits amendments of the sort involved here to be given retroactive effect for qualification purposes. In Hauser v. Commissioner,78 T.C. 930, 942-943 (1982), we concluded that, for purposes of section 219(b), the retroactive effect of section 401(b)↩ applies in determining whether a plan is a tax-qualified plan, even though it does not apply in determining whether an individual is an active participant.
11. PROCEDURES IN CONNECTION WITH THE ISSUANCE OF CERTAIN DETERMINATION LETTERS BY THE SECRETARY OF THE TREASURY Sec. 3001.(a) Before issuing an advance determination of whether a pension, profit-sharing, or stock bonus plan, a trust which is a part of such a plan, or an annuity or bond purchase plan meets the requirements of part I of subchapter D of chapter 1 of the Internal Revenue Code of 1954, the Secretary of the Treasury shall require the person applying for the determination to provide, in addition to any material and information necessary for such determination, such other material and information as may reasonably be made available at the time such application is made as the Secretary of Labor may require under title I of this Act for the administration of that title. The Secretary of the Treasury shall also require that the applicant provide evidence satisfactory to the Secretary that the applicant has notified each employee who qualifies as an interested party (within the meaning of regulations prescribed under section 7476(b)(1)↩ of such Code (relating to declaratory judgments in connection with the qualification of certain retirement plans)) of the application for a determination. 12. Section 1.7476-1. Interested parties. * * * (b) Interested parties--(1) In general. If paragraphs (b)(2), (3), (4), and (5) of this section do not apply, then, except as otherwise provided in paragraphs (b)(6)(i), (ii), and (iii) of this section, the following persons shall be interested parties with respect to an application for an advance determination as to the qualified status of a retirement plan: (i) All present employees of the employer who are eligible to participate in the plan (as defined in paragraph (d)(2) of this section), and (ii) All other present employees of the employer whose principal place of employment (as defined in paragraph (d)(3) of this section) is the same as the principal place of employment of any employee described in paragraph (b)(1)(i) of this section. * * * (5) Plan terminations. In the case of an application for an advance determination with respect to whether a plan termination affects the continuing qualification of a retirement plan, paragraphs (b)(1), (2), (3) and (4) of this section shall not apply, and all present employees with accrued benefits under the plan, all former employees with vested benefits under the plan, and all beneficiaries of decreased former employees currently receiving benefits under the plan, shall be interested parties.
13. See Jones v. Commissioner,T.C. Memo. 1980-512, affd. without pub. op. 676 F.2d 710↩ (CA9 1982).
14. Congress did address this problem in 1982 when it enacted section 416, requiring the provision of certain minimum benefits to non-key employees to top-heavy plans, effective for taxable years beginning after December 31, 1983. See section 416(c), as enacted by section 240(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 514-515.↩
15. Sec. 219↩, as amended by sec. 311(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 274.
16. SEC 4973. TAX ON EXCESS CONTRIBUTIONS TO INDIVIDUAL RETIREMENT ACCOUNTS, CERTAIN SECTION 403(b) CONTRACTS, CERTAIN INDIVIDUAL RETIREMENT ANNUITIES, AND CERTAIN RETIREMENT BONDS. (a) Tax Imposed.--In the case of-- (1) an individual retirement account (within the meaning of section 408(a)), * * * established for the benefit of any individual, there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the excess contributions to such individual's accounts * * * (determined as of the close of the taxable year). * * * The tax imposed by this subsection shall be paid by such individual. [The subsequent amendments of this provision (by secs. 1501(b)(8)(A) and 1904(a)(22)(A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1736, 1814; sec. 311(h)(9) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 282; and secs. 491(d)(41) and 491(d)(55) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 851-852) do not affect the instant case.] ↩
17. SEC. 4973. TAX ON EXCESS CONTRIBUTIONS TO INDIVIDUAL RETIREMENT ACCOUNTS, CERTAIN SECTION 403(b) CONTRACTS, CERTAIN INDIVIDUAL RETIREMENT ANNUITIES, AND CERTAIN RETIREMENT BONDS. (b) Excess Contributions.--For purposes of this section, in the case of individual retirement accounts, individual retirement annuities, or bonds, the term "excess contributions" means the sum of-- (1) the excess (if any) of-- (A) the amount contributed for the taxable year to the accounts or for the annuities or bonds (other than a rollover contribution described in section 402(a)(5), 403(a)(4), 408(d)(3), or 409(b)(3)(C)), over (B) the amount allowable as a deduction under section 219 for such contributions, * * *. [The subsequent amendments of this provision (by subpars. (B) and (C) of sec. 1501(b)(8) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1736; secs. 156(c)(3), 157(b)(3), 157(j)(1), and 701(aa)(1) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2803, 2804-2805, 2809, 2921; sec. 101(a)(14)(B) of the Technical Corrections Act of 1979, Pub. L. 96-222, 94 Stat. 194, 204; secs. 311(h)(7), 311(h)(10), and 313(b)(2) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 282, 286; and secs. 491(d)(42) and 491(d)(43) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 851) do not affect the instant case.] ↩
18. It appears that Robert made a contribution of $1,500 to the IRA in 1975, in addition to the 1976 contribution in issue in the instant case. See Johnson v. Commissioner,74 T.C. 1057, 1060-1061 (1980), affd. 661 F.2d 53 (CA5 1981), for a discussion of how, under section 4973(b)(2), a contribution to an IRA in one year can affect the amount of the section 4973(a) excise tax in a later year. Since respondent does not contend that the excise tax for 1976 is greater than $90 (6 percent of the $1,500 1976 contribution), we need not decide how any 1975 contribution might affect the section 4973↩ tax for 1976. See section 6214(a).